**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AMERICAN BANKERS ASSOCIATION,<br><div align="center">Plaintiff,</div><br><div align="center">vs.</div><br>SS&C TECHNOLOGIES, INC,<br><div align="center">Defendant.</div> | Civil Action No. 19-CV-11592<br><br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, American Bankers Association ("Plaintiff or "ABA"), by its attorneys, Axinn, Veltrop & Harkrider LLP, complaining of the Defendant SS&C Technologies, Inc. ("Defendant" or "SS&C"), alleges on knowledge as to its own actions, and otherwise on information and belief, as follows.

<div align="center">

**NATURE OF THE ACTION**

</div>

1.      This is an action seeking injunctive and monetary relief for SS&C's intentional infringement of ABA's copyrights in certain advanced training coursework for the financial services and banking industry, set forth in Exhibit A (the "Copyrighted Works").

2.      ABA also brings this action seeking injunctive and monetary relief under state law.

3.      In 2002, ABA and SS&C's predecessor-in-interest, Zoologic, Inc. ("Zoologic"), entered into a contract in which ABA, which has 140 years of expertise and experience in the banking industry, agreed to allow Zoologic to sell ABA courses to Zoologic customers.

4.      Among other things, Zoologic promised that it would provide proper attribution to ABA for ABA's Copyrighted Works, even after the contract between ABA and Zoologic terminated.

<div align="center">1</div>

5.    Throughout the term of the contract, ABA performed all of its obligations, and provided tremendous benefit to Zoologic and SS&C as a result.

6.    Yet, SS&C, which is bound by the contract as Zoologic's corporate successor, has reneged on its contractual promise and removed ABA's logo from ABA's Copyrighted Works. This material breach of the contract terminated any license that ABA had previously granted with respect to the Copyrighted Works. But SS&C has persisted in its illegal and unauthorized reproduction of ABA's Copyrighted Works. When ABA asked SS&C to fulfill its contractual promise and to honor ABA's intellectual property and contractual rights by ceasing to market the offending material, SS&C feigned compliance, but only for a few months before brazenly continuing its infringing activities.

7.    ABA brings this action to enforce its rights, to seek injunctive relief and to recover damages that SS&C has caused it to suffer, together with prejudgment and postjudgment interest. ABA also seeks its attorneys' fees and costs incurred in pursuing this action.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction of this action under 28 U.S.C. § 1338(a) because the action arises under the Copyright Act, 17 U.S.C. §§ 101 et seq., and original jurisdiction of this action under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

9.    In addition to this Court's original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 since, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this District and pursuant to a forum selection clause contained in Section 17.9 of the Contract giving rise to this suit.

11.     This Court has personal jurisdiction over SS&C by virtue of Section 17.9 of the Contract, which expressly provides for the exercise of personal jurisdiction by the federal courts of New York.

12.     This Court also has personal jurisdiction over SS&C under N.Y. C.P.L.R. § 301 because, on information and belief, SS&C maintains a significant continuous corporate presence in New York, at least by maintaining nine U.S. offices in the State of New York, including at 4 Times Square, New York, N.Y., 10036; 24 W. 25th Street, New York, N.Y. 10010; 622 Third Avenue, New York, N.Y. 10017; 17 Corporate Circle, Albany, N.Y. 12203; 1441 Route 22, Brewster N.Y. 10509; 1 South Road, Harrison, N.Y. 10528; 100 South Bedford Road, Mt. Kisco, N.Y. 10549; 145 Huguenot Street, New Rochelle, N.Y. 10801; and 1565 Front St., Yorktown Heights, N.Y. 10598.  On information and belief, SS&C maintains New York telephone lines and employees for these offices.  Further, SS&C is authorized to do business in New York. SS&C has also availed itself of this Court on multiple occasions.

13.     This Court also has personal jurisdiction over SS&C under N.Y. C.P.L.R. § 302 because, on information and belief, SS&C transacts business within the State of New York to supply training software and training services, and committed tortious acts of copyright infringement within the State of New York.

## PARTIES

14.     Plaintiff, American Bankers Association ("ABA"), is a trade association incorporated under the laws of the District of Columbia and having its principal place of business

at 1120 Connecticut Avenue NW, Washington, District of Columbia 20036. Incorporated in 1974, ABA supports America's banks as they perform their vital role in energizing the economy and helping communities thrive, from delivering the latest industry news to developing mission critical training offerings.

15.     On information and belief, SS&C Technologies, Inc. ("SS&C") is a corporation organized and existing under the laws of Delaware, having its principal place of business at 80 Lamberton Road, Windsor, Connecticut 06095. On information and belief, SS&C acquired Zoologic in 2006, which has its principal place of business at 104 Fifth Avenue, New York, New York 10011. On information and belief, Zoologic was in the business of repackaging and selling training programs for the financial services industry focused on education for investment management professionals and those seeking careers in financial services in New York. In addition to continuing Zoologic's business, SS&C is in the business of providing investment and financial software-enabled services and software for the financial services industry in New York.

## FACTUAL ALLEGATIONS

### I.     PLAINTIFF IS THE AUTHOR OF TRAINING MATERIALS FOR THE FINANCIAL SERVICES INDUSTRY

16.     ABA wrote and created the Copyrighted Works, which comprise various material for advanced online training courses for the financial services and banking industry.

17.     The Copyrighted Works are wholly original material created by ABA.

18.     ABA is the author of the Copyrighted Works.

19.     The Copyrighted Works are copyrightable subject matter.

20.     ABA is the exclusive owner of all right, title, and interest, including all rights under copyright, in the Copyrighted Works.

21.     ABA secured the exclusive rights and privileges in the Copyrighted Works, and it is the owner of valid and subsisting United States Copyright Registrations for the Copyrighted Works that were issued by the United States Copyright Office.  True and correct copies of the Certificates of Registration are attached hereto as Exhibit A.  Each Copyrighted Work embodies a single or multiple copyrights, capturing the multiple parts of each Copyrighted Work such as learning materials, participant handbooks and guides, facilitator handbooks and guides, and leader handbooks and guides.

22.     ABA owns the copyrights to the Copyrighted Works, which are identified as follows by name of the related ABA course and registration number and the date of the copyrights embodied within the Copyrighted Work:

i.      Bank Bribery Act:  No. TX 8-410-710, June 13, 2017; No. TX 7-126-536, August 21, 2008;

ii.      Bank Protection Act:  No. TX 8-411-474, September 28, 2017; No. TX 7-126-543, August 21, 2008;

iii.      Bank Secrecy Act:  No. TX 7-126-553, August 13, 2008; No. TX 7-126-557, September 8, 2008; No. TX 5-463-233, November 6, 2001; No. TX 5-458-336, November 6, 2001;

iv.      Banking Today:  No. TX 7-126-562, August 28, 2008; No. TX 6-930-142, August 20, 2007; No. TX 6-930-153, August 20, 2007; No. TX 6-011-455, July 28, 2004; No. TX 6-011-456, July 28, 2004; No. TX 4-890-625, November 23, 1998; No. TX 4-895-314, November 23, 1998; No. TX 4-890-691 November 23, 1998;

v. Building and Retaining Customer Relationships: No. TX 6-981-793, May 28, 2009; No. TX 6-981-799, May 28, 2009; No. TX 7-126-691, September 10, 2008; No. TX 4-885-698, November 23, 1998; No. TX 4-885-700, November 23, 1998;

vi. Building Trust Expertise Taxation and Estate Planning: No. TX 7-126-429, September 17, 2008; No. TX 5-676-029, February 10, 2003;

vii. Building Trust Expertise Investment Management: No. TX 7-126-572, September 17, 2008; No. TX 5-686-919, February 13, 2003;

viii. Building Trust Expertise Trust Administration: No. TX 7-126-432, September 17, 2008; No. TX 5-686-208, February 12, 2003;

ix. Business Etiquette: No. TX 6-981-762, May 28, 2009; No. TX 6-979-151, May 28, 2009; No. TX 7-126-696, August 28, 2008; No. TX 7-128-532, August 28, 2008; No. TX 5-336-978, February 8, 2000; No. TX 5-336-977, February 8, 2000; No. TX 5-120-004, December 22, 1999; No. TX 5-120-008, December 22, 1999;

x. Calling on Small Business Customers: No. TX 7-126-698, August 28, 2008; No. TX 6-979-149, May 28, 2009; No. TX 6-981-818, May 28, 2009; No. TX 5-271-637, August 2, 2000; No. TX 5-267-374, August 2, 2000;

xi. Coaching for Success: No. TX 7-126-701, September 2, 2008; No. TX 6-484-918, November 17, 2006; No. TX 6-465-055, November 17, 2006; No. TX 5-110-496, December 22, 1999; No. TX 5-110-519, December 22, 1999;

xii. Consumer Credit Products: No. TX 7-126-704, September 2, 2008; No. TX 5-334-428, February 2, 2001; No. TX 5-334-436, February 2, 2001;

xiii.　　　Corrective Action:  No. TX 7-126-705, September 2, 2008; No. TX 6-465-476, November 17, 2006; No. TX 6-465-051, November 17, 2006; No. TX 5-201-358, December 22, 1999; No. TX 5-201-331, December 22, 1999;

xiv.　　　Credit Products for Small Businesses:  No. TX 8-418-905, July 7, 2017; No. TX 6-978-000, May 28, 2009; No. TX 6-977-778, May 28, 2009; No. TX 5-120-007, December 22, 1999; No. TX 5-120-009, December 22, 1999;

xv.　　　Cross-Selling Deposit Products:  No. TX 7-126-709, September 8, 2008; No. TX 6-981-867, May 28, 2009; No. TX 6-981-863, May 28, 2009; No. TX 5-334-422, February 2, 2001; No. TX 5-336-964, February 1, 2001;

xvi.　　　Dealing Effectively with Co-workers:  No. TX 7-014-535, May 28, 2009; No. TX 6-977-765, May 28, 2009; No. TX 7-126-711, August 28, 2008; No. TX 5-336-970, February 2, 2001; No. TX 5-336-969, February 2, 2001;

xvii.　　　Discretionary Distributions:  No. TX 7-014-806, September 18, 2008;

xviii.　　　Effective Referrals:  No. TX 7-126-716, September 9, 2008; No. TX 6-979-091, May 28, 2009; No. TX 6-981-884, May 28, 2009; No. TX 4-895-313, November 23, 1998; No. TX 4-890-689, November 23, 1998;

xix.　　　Electronic Fund Transfer Act – Reg E:  No. TX 7-126-616, August 21, 2008;

xx.　　　Equal Credit Opportunity Act – Reg B:  No. TX 8-412-405, June 22, 2017; No. TX 7-126-625, August 21, 2008; No. TX 5-463-226, November 6, 2001; No. TX 5-463-085, November 6, 2001;

xxi.　　　Estate Planning for the Marital Deduction:  No. TX 7-014-859, September 18, 2008;

xxii. Ethical Issues for Bankers:  No. TX 7-126-718, August 28, 2008; No. TX 6-484-919, November 17, 2006; No. TX 6-465-057, November 17, 2006; No. TX 5-336-975, February 2, 2001; No. TX 5-336-976, February 2, 2001;

xxiii. Expedited Funds Availability Act:  No. TX 8-411-235, June 23, 2017; No. TX 7-126-634, August 21, 2008; No. PA 457-382, March 26, 1990;

xxiv. Extending Credit to Bank Insiders – Reg O:  No. TX 7-126-645, August 21, 2008;

xxv. Fair Credit Reporting Act:  No. TX 8-626-947, August 20, 2018; No. TX 7-126-647, August 21, 2008; No. TX 5-463-230, November 6, 2001; No. TX 5-458-335, November 6, 2001;

xxvi. Fair Housing Act:  No. TX 7-126-649, August 21, 2008;

xxvii. Fair Lending:  No. TX 6-900-409, December 8, 2008; No. TX 5-463-231, November 6, 2001; No. TX 5-476-039, November 6, 2001; No. TX 3-981-062, December 5, 1994; No. TX 3-981-068, December 5, 1994; No. TX 3-930-003, November 10, 1994; No. TX 3-065-708, May 6, 1991;

xxviii. Floor Disaster Protection Act:  No. TX 7-126-665, August 21, 2008;

xxix. Fundamentals of Consumer Learning:  No. TX 6-978-055, May 28, 2009; No. TX 6-978-051, May 28, 2009; No. TX 7-126-725, September 2, 2008; No. TX 6-486-239, November 17, 2006; No. TX 6-465-052, November 17, 2006; No. TX 5-266-401, August 2, 2000; No. TX 5-271-643, August 2, 2000;

xxx. Fundamentals of Mortgage Lending:  No. TX 5-334-621, February 2, 2001; No. TX 5-334-622, February 2, 2001;

xxxi.	Fundamentals of Small Business Banking:  No. TX 6-978-003, May 28, 2009; No. TX 6-977-769, May 28, 2009; No. TX 7-126-728, August 28, 2008; No. TX 5-120-006, December 22, 1999; No. TX 5-120-011, December 22, 1999;

xxxii.	Hiring the Best:  No. TX 7-126-730, September 2, 2008; No. TX 5-336-979, February 2, 2001; No. TX 5-336-980, February 2, 2001;

xxxiii.	Improving Productivity:  No. TX 7-126-734, September 2, 2008; TX 5-110-495, December 22, 1999; No. TX 5-201-332, December 22, 1999; No. TX 729-141, April 16, 1981;

xxxiv.	Introduction to Analyzing Financial Statements:  No. TX 8-627-310, October 17, 2018; No. TX 7-126-736, August 28, 2008; No. TX 5-334-424, February 2, 2001; No. TX 5-334-626, February 2, 2001;

xxxv.	Introduction to Financial Planning Products:  No. TX 7-297-921, September 17, 2008; No. TX 4-708-784, June 24, 1998; No. TX 4-690-132, June 24, 1998;

xxxvi.	Introduction to Relationship Selling:  No. TX 6-981-809, May 28, 2009; No. TX 6-981-815, May 28, 2009; No. TX 7-126-738, September 10, 2008; No. TX 4-885-697, November 23, 1998; No. TX 4-885-701, November 23, 1998;

xxxvii.	Managing Change:  No. TX 6-977-984, May 28, 2009; No. TX 6-977-787, May 28, 2009; No. TX 7-126-739, September 2, 2008; No. TX 5-336-971, February 2, 2001; No. TX 5-336-972, February 2, 2001;

xxxviii.	Managing Employee Relations:  No. TX 7-128-300, September 2, 2008; No. TX 6-486-240, November 17, 2006; No. TX 6-465-054, November 17, 2006; No. TX 5-266-404, August 2, 2000; No. TX 5-267-376, August 2, 2000;

xxxix.        Managing Time at Work:  No. TX 5-336-967, February 2, 2001; No. TX 5-336-968, February 2, 2001;

xl.        Office of Foreign Asset Control (OFAC):  No.  TX 7-126-670, August 21, 2008;

xli.        Overview of Financial Statements:  No. TX 5-120-005, December 22, 1999; No. TX 5-120-010, December 22, 1999;

xlii.        Performance Management:  No. TX 6-465-056, November 17, 2006; No. TX 6-465-474, November 17, 2006; No. TX 5-267-375, August 2, 2000; No. TX 5-266-403, August 2, 2000;

xliii.        Personal Tax Return Analysis:  No. TX 6-978-009, May 28, 2009; No. TX 6-977-780, May 28, 2009; No. TX 7-126-483, September 2, 2008; No. TX 5-230-283, February 18, 2000; No. TX 5-230-284, March 13, 2000;

xliv.        Privacy for Customer Contact Personnel:  No. TX 7-126-674, August 21, 2008;

xlv.        Real Estate Settlement Procedures Act:  No. TX 8-626-950, August 20, 2018; No. TX 8-562-857, April 18, 2018; No. TX 7-126-675, August 21, 2008; No. TX 5-463-234, November 6, 2001; No. TX 5-463-084, November 6, 2001;

xlvi.        Referring Mutual Funds and Securities Customers:  No. TX 7-128-363, September 2, 2008; No. TX 5-266-402, August 2, 2000; No. TX 5-271-645, August 2, 2000;

xlvii.        Referring Trust Client/Customers:  No. TX 8-436-018, July 13, 2017; No. TX 5-266-405, August 2, 2000; No. TX 5-271-644, August 2, 2000;

xlviii.    Rewards and Recognition:  No. TX 7-128-381, September 2, 2008; No. TX 6-465-475, November 17, 2006; No. TX 6-465-050, November 17, 2006; No. TX 5-336-965, February 2, 2001; No. TX 5-336-966, February 2, 2001;

xlix.    Sales Coaching in the Bank:  No. TX 6-977-991, May 28, 2009; No. TX 6-977-774, May 28, 2009; No. TX 7-128-388, September 10, 2008; No. TX 5-334-423, February 2, 2001; No. TX 5-336-963, February 2, 2001;

l.    Servicing and Growing Small Business Relationships:  No. TX 6-979-100, May 28, 2009; No. TX 6-981-876, May 28, 2009; No. TX 7-128-516. August 28, 2008; No. TX 5-336-952, February 2, 2001; No. TX 5-336-953, February 2, 2001;

li.    Successful Sales Campaigns:  No. TX 7-128-522, September 10, 2008; No. TX 5-336-958, February 2, 2001; No. TX 5-336-959, February 2, 2001;

lii.    Truth in Savings Act:  No. TX 8-626-966, August 20, 2018; No. TX 7-126-681, August 21, 2008; No. TX 7-126-687, August 21, 2008; No. TX 7-126-688, August 21, 2008; No. TX 7-126-684, August 20, 2008;

liii.    Understanding Financial Planning:  No. TX 7-126-514, September 17, 2008; No. TX 4-800-572, June 21, 1998; No. TX 4-708-780, June 24, 1998.

23.    Since as early as 1981, Copyrighted Work(s) have been published and sold by ABA, and all copies, distributions, or resales of Copyrighted Works have been made by ABA or under ABA's authority or license.

24.    The Copyrighted Works, and all copies of them made and sold by ABA, or under ABA's license or authority, have contained a proper notice of copyright, except when such copies have been made or sold in breach of a license agreement by SS&C.

25.     ABA has published, distributed, and sold the Copyrighted Works through its online membership platform in the form of online learning courses.

26.     The Copyrighted Works are of significant value to ABA because ABA derives substantial monetary benefit from sale of the Copyrighted Works, in addition to providing invaluable advanced instruction to the financial services industry in accordance with ABA's core mission.

## II.    DESIRING ACCESS TO PLAINTIFF'S COPYRIGHTED TRAINING COURSES, DEFENDANT ENTERED INTO A CONTRACT ████

27.     On October 22, 2002, ABA and Zoologic entered into a contract entitled "Zoologic Inc. Content Provider Agreement with the American Bankers Association," (the "Contract").  A true and correct copy of the Contract is attached hereto as Exhibit B.

28.     The Contract states that the "parties agree that any dispute arising under this Agreement shall be resolved in the federal or local courts of New York, and both parties expressly consent to jurisdiction therein."  *See* Ex. B § 17.9.

29.     Under the Contract, ABA agreed, subject to the terms of the Contract, ████

████████████████████████████████████

████████████████████████████████████

████████████████████     *See id.* § ███.

30.     Among other obligations, Zoologic was required to ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████     *See id.*

§ ██.

31.     Zoologic ██████████████████████████████████████████████

████████████████████████ *See id. §* ████ .

32.     Zoologic acknowledged that ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████     *See id. §* ████ .

33.     Zoologic and ABA expressly agreed that ████████████████████████

████████████████████████ . *See id. §* ████ .

34.     On or about September 5, 2006, SS&C announced that it had acquired the assets

of Zoologic for $2.5 million in cash.  (*See* S*S&C Announces Acquisition of Zoologic(TM);*

*Leading Provider of Web-Based Courseware for Financial Services to Join Software Leader*,

BusinessWire, https://www.businesswire.com/news/home/20060905005189/en/SSC-Announces-

Acquisition-Zoologic-TM-Leading-Provider, Ex. C.)

35.     In announcing this acquisition, SS&C touted Zoologic's "vast library of scalable,

fully interactive courses and simulations for the financial services market," noting that

Zoologic's offerings had been "developed to deliver an optimal learning experience to financial

professionals and include[d] over 540 hours of electronic content including accounting,

compliance, insurance, derivatives, portfolio management, trust, risk management and more."

(*Id.*)  SS&C also emphasized that "[t]he majority of the courseware content has been provided or

vetted by subject matter experts from global financial service providers."  (*Id.*)

36. Upon information and belief, the "scalable, fully interactive courses" identified by SS&C included the Copyrighted Works.

37. Upon information and belief, the "subject matter experts from global financial service providers" who had "provided or vetted" Zoologic's "courseware" included ABA.

38. Upon information and belief, in acquiring the assets of Zoologic on or about September 5, 2006, SS&C became Zoologic's corporate successor to the Contract.

39. SS&C assumed the Contract on or about September 5, 2006.

40. After September 5, 2006, SS&C repeatedly manifested its understanding and agreement that it had succeeded to Zoologic's rights and obligations under the Contract. For example, SS&C paid royalties under the Contract. Moreover, in the parties' numerous interactions since September 5, 2006, SS&C has never denied that it succeeded to Zoologic's rights and obligations under the Contract.

41. Because of SS&C's assumption of the contract and SS&C's status as Zoologic's corporate successor, in late 2006, ABA attempted to begin the process of implementing a transition plan to continue the parties' performance under the Contract.

42. The Contract terminated at a later date.

43. ███████████████ of the Contract survived termination.

44. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████

45. In other words, the Contract contains ██████████████████████████

████████████████████████████████████████████

**III. DEFENDANT HAS SOLD AND CONTINUES
TO SELL PLAINTIFF'S COPYRIGHTED WORKS WITHOUT
PROPER COPYRIGHT NOTICE AND WITHOUT AUTHORIZATION**

46. The Copyrighted Works ███████████████████████████████

███████████████

47. On information and belief, SS&C has continued to market and sell the Copyrighted Works since the termination of the Contract.

48. But, on information and belief, SS&C has removed ABA's logos and/or mutually agreed upon designation from one or more of these Copyrighted Works.

49. SS&C's intentional decision to market these Migrated Courses without ABA's logos and/or mutually agreed upon designation is a material breach of the conditional license in Section 14.4.

50. After SS&C's material breach of the Contract, any license to ABA's Copyrighted Works that may have been previously granted was terminated.

51. SS&C's material breach permitted ABA to revoke any license that may have been previously granted.

52. ABA unambiguously revoked, through its communications with SS&C regarding SS&C's unauthorized use of ABA's Copyrighted Works, any license that may have been previously granted.

53. On information and belief, SS&C understood that these communications revoked any license that may have been previously granted.

54. SS&C has therefore been using the Copyrighted Works without a license, in violation of ABA's copyright.

55. After ABA learned of this breach of contract and copyright violation, ABA wrote to SS&C on November 13, 2018 to raise SS&C's unauthorized use of ABA's Copyrighted Works.

56. Although ABA asked for a response by the week of January 7, 2019, SS&C did not respond until late January, and it did not remedy its breach or stop its infringement.

57. On information and belief, it was not until March 2019 that SS&C finally removed ABA's Copyrighted Works from its website, only to repost those materials in August 2019 and resume its violations of ABA's copyright.

58. On information and belief, SS&C will continue to remain in breach and infringe ABA's intellectual property rights unless and until this Court enjoins SS&C from doing so.

## IV. DEFENDANT'S WILLFUL MISCONDUCT HAS CAUSED PLAINTIFF DAMAGES AND WILL CAUSE PLAINTIFF IRREPARABLE HARM

59. SS&C has refused to remedy its intentional breach and copyright violations.

60. On information and belief, SS&C is selling ABA's Copyrighted Works to multiple customers, thereby causing damages to ABA.

61. In a section labeled ███████████ the Contract states that █████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████ Ex. B § ████ .

62. On information and belief, SS&C has published, reproduced, distributed, or sold, or caused to be reproduced, distributed, or sold, identical copies of the Copyrighted Works by

selling the Copyrighted Works through their online learning platforms. The infringing materials marketed and sold by SS&C materially present the same creative expression as the Copyrighted Works, on information and belief.

63.     For example, the following images are an excerpt from ABA's "Banking Today" course and an excerpt from SS&C's infringing "Banking Today" course:

### ABA's Banking Today Course



## SS&C's Infringing Banking Today Course



64.     SS&C's use of the Copyrighted Works without adequate attribution was without ABA's knowledge and is without ABA's authorization or consent, and without any compensation to ABA.

65.     On information and belief, since SS&C began exploiting the Copyrighted Works, it has sold the Copyrighted Works to customers in the financial industry.

66.     On information and belief, SS&C continues to sell the Copyrighted Works.

67.     On further information and belief, SS&C plans to continue to sell the Copyrighted Works.

68.     On information and belief, SS&C's materially identical copying and exploitation of the Copyrighted Works was willful, and in disregard of, and with indifference to, the rights of ABA.

69.     On further information and belief, SS&C's intentional, infringing conduct was undertaken to reap the industry benefit and value associated with the Copyrighted Works.  By failing to obtain ABA's authorization to use the Copyrighted Work or to compensate ABA for the use, SS&C has avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Copyrighted Work without proper copyright notice, as well as the restrictions that ABA is entitled to and would place on any such exploitations as conditions for ABA's permission, including the obligation to provide proper copyright notice and the right to deny permission altogether.

70.     ABA has acted reasonably and in good faith to assert its rights in the Copyrighted Works and to seek Defendant's agreement to respect these rights without burdening the Court.

71.     On November 13, 2018, ABA wrote a letter notifying SS&C of SS&C's unauthorized use of ABA's copyrighted material.  A true and correct copy of that letter is attached hereto as Exhibit D.

72.     After SS&C refused to respect ABA's rights, on February 5, 2019, ABA sent a letter to SS&C requesting that SS&C cease and desist any further use of the Copyrighted Works and pay ABA for its unauthorized past use of the Copyrighted Works.  A true and correct copy of that letter is attached hereto as Exhibit E.

73.     On February 14, 2019, SS&C agreed to cease and desist further use of the Copyrighted Works, but would not agree to compensate ABA for SS&C's unauthorized past use of the Copyrighted Works.

74.     But by August 2019, ABA learned that SS&C had, in fact, continued to publish, reproduce, distribute, or sell the Copyrighted Works without attribution.

75. On or about August 29, 2019, ABA again demanded that SS&C cease and desist all further use of the Copyrighted Works.

76. SS&C has not complied with ABA's demands to cease and desist.

77. As a result of SS&C's actions described above, ABA has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, publication, distribution, and sale of the Copyrighted Works. SS&C has not properly accounted to or otherwise paid ABA for its use of the Copyrighted Works after termination of the Contract.

78. SS&C's acts are causing, and unless restrained will continue to cause, damage and immediate irreparable harm to ABA for which ABA has no adequate remedy at law.

79. Further, SS&C's breach and threatened breach will cause irreparable injury to ABA, including without limitation to ABA's reputational standing and good will.

80. Thus, as a result of SS&C's unauthorized use of the Copyrighted Works in breach of the Contract and in violation of the Copyright Act, ABA is entitled at least to an injunction prohibiting SS&C from marketing the Copyrighted Works and ordering SS&C to destroy any Copyrighted Works in its possession or control.

## COUNT ONE: BREACH OF CONTRACT

81. ABA repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82. ABA and Zoologic entered into a Contract that, among other things, granted SS&C a conditional license to market ABA's Copyrighted Works contained in Migrated Courses.

83. Under Section 14.4.1.2 of that Contract, if SS&C continued to sell Migrated Courses, it was required to maintain ABA's logo or a mutually agreed upon designation on each of the Migrated Courses to denote ABA's intellectual property ownership.

84.    SS&C has breached the Contract at least because SS&C continued to sell the Migrated Courses but has not maintained ABA's logo or a mutually agreed upon designation on each of the Migrated Courses to denote ABA's intellectual property ownership.

85.    SS&C has not paid ABA for the right to sell Copyrighted Works contained in Migrated Courses without ABA's logo or a mutually agreed upon designation on each of the Migrated Courses to denote ABA's intellectual property ownership.

86.    ABA has performed under the Contract, including, for example, by providing the Copyrighted Works contained in Migrated Courses to SS&C.

87.    SS&C's breach has caused, and will cause, ABA damages and/or irreparable harm, including without limitation, reputational harm, loss of goodwill, attorneys' fees, and costs associated with correcting the breach.

## COUNT TWO, IN THE ALTERNATIVE TO COUNT ONE: UNJUST ENRICHMENT

88.    ABA repeats and realleges paragraphs 1 through 2, 7-9, 12-26, 34-37, 54, 57, 60, 62-70, 73-74 as if fully set forth herein.

89.    A "plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint." *E.g.*, *Fantozzi v. Axsys Techs., Inc.*, No. 07 CIV. 02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).  To the extent that this Count Two does not allege a wrong apart from SS&C's breach of contract, Count Two is expressly asserted in the alternative to Count One.

90.    On information and belief, SS&C disputes the scope or enforceability of the Contract.  But there is no dispute that SS&C owes ABA compensation for its use of ABA's course materials.

91.    SS&C has received ABA's course materials, which are valuable and belong to ABA.

92.     SS&C has been enriched by its use and sale of ABA's course material at ABA's expense.

93.     SS&C's enrichment has been at ABA's expense, at least insofar as SS&C has denied ABA the credit that it is due for its goodwill and intellectual property.

94.     SS&C's enrichment has also been at ABA's expense, at least because SS&C has not compensated ABA for the unauthorized use of ABA's course material and for SS&C's profiting from ABA's course materials, which SS&C has passed off as its own.

95.     Under these circumstances, equity and good conscience require that SS&C return the money and benefit that it has unjustly received to ABA.

### COUNT THREE, IN THE ALTERNATIVE TO COUNT ONE: <br> BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

96.     ABA repeats and realleges paragraphs 1 through 2, 7-9, 12-26, 34-37, 54, 57, 60, 62-70, 73-74 as if fully set forth herein.

97.     "A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative." *E.g.*, *Fantozzi*, 2008 WL 4866054, at *7.  To the extent that this Count Three does not allege a wrong apart from SS&C's breach of contract, this Count Three is expressly asserted in the alternative to Count One.

98.     On information and belief, SS&C disputes the scope or enforceability of the Contract.

99.     SS&C owes ABA a duty to act in good faith and to deal fairly.

100.     For example, SS&C owes ABA a duty to act in good faith and to deal fairly by not misrepresenting or concealing that SS&C sells intellectual property belonging to ABA without proper rights granted by ABA or suggesting that ABA's material was created by SS&C.

101.     SS&C has breached its duty to ABA.

102.     For example, on information and belief, SS&C has removed ABA's logos and other identifying information from material that signify ABA's authorship of such materials.

103.     When ABA alerted SS&C that it was using ABA materials without ABA's permission and passing those materials off as SS&C's materials, SS&C acknowledged that the materials should not be available without appropriate credit to ABA.

104.     ABA then learned that SS&C may have temporarily removed the materials, only to find that SS&C posted the materials again a short time later.

105.     Thus, SS&C has failed to act in good faith and deal fairly with ABA by acknowledging SS&C's misconduct only when confronted by it and by underhandedly continuing in its misconduct while leading ABA to believe that SS&C would respect ABA's rights, including by temporarily removing the offending material and by purporting to provide an incomplete disclosure of its conduct.

106.     This breach has caused ABA damages and/or irreparable harm, including without limitation, reputational harm, loss of goodwill, attorneys' fees, and costs associated with correcting the breach of the covenant of good faith and fair dealing.

## COUNT FOUR: FEDERAL COPYRIGHT INFRINGEMENT

107.     ABA repeats and realleges paragraphs 1 through 106, as if fully set forth herein.

108.     The Copyrighted Works are original advanced training coursework for the financial services and banking industry containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq.*  ABA is the exclusive owner of rights under copyright in and to the Copyrighted Work.  ABA owns a valid copyright registration for each copyright embodied within the Copyrighted Works, attached as Exhibit A.

109. Through SS&C's conduct alleged herein, including SS&C's reproduction, distribution, and sale of the Copyrighted Works without ABA's permission or license, SS&C has directly infringed ABA's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

110. ABA has informed SS&C that SS&C has infringed ABA's copyrights, at least through sale of the Copyrighted Works, and on information and belief SS&C has continued to infringe the copyrights.

111. On information and belief, SS&C's infringing conduct alleged herein was and continues to be willful and with full knowledge of ABA's rights in the Copyrighted Work, and has enabled SS&C illegally to obtain profit therefrom.

112. As a direct and proximate result of SS&C's infringing conduct alleged herein, ABA has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), ABA is also entitled to recovery of SS&C's profits attributable to SS&C's infringing conduct alleged herein, including from any and all sales of the Copyrighted Work and products incorporating or embodying the Copyrighted Work, and an accounting of and a constructive trust with respect to such profits.

113. Alternatively, ABA is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for SS&C's willful infringing conduct for each copyright, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

114. ABA further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

115. As a direct and proximate result of SS&C's infringing conduct alleged herein, ABA has sustained and will continue to sustain substantial, immediate, and irreparable injury, for

which there is no adequate remedy at law. On information and belief, unless SS&C's infringing conduct is enjoined by this Court, SS&C will continue to infringe the Copyrighted Works. ABA therefore is entitled to permanent injunctive relief restraining and enjoining SS&C's ongoing infringing conduct.

## JURY DEMAND

ABA hereby demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

1.      That Defendant has violated Sections 501 of the Copyright Act (17 U.S.C. § 501);

2.      That Defendant has breached the Contract;

3.      In the alternative, that Defendant has violated the covenant of good faith and fair dealing and been unjustly enriched;

4.      Granting an injunction permanently enjoining the Defendant, Defendant's employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

   i.      distributing, marketing, advertising, promoting, or selling or authorizing any third party to distribute, market, advertise, promote, or sell the Copyrighted Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works; and

   ii.      aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraph (i).

5.      That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct, including Defendant's profits from sales and any

other exploitation of the Copyrighted Works, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works.

6. That Defendant be ordered to destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct, including without limitation all remaining copies or inventory of the Copyrighted Works and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Works, as well as all means for manufacturing them.

7. That Defendant, at Defendant's own expense, be ordered to recall the Copyrighted Works from any distributors, retailers, vendors, or others that have distributed the Copyrighted Works on Defendant's behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works, and that Defendant be ordered to destroy or deliver up for destruction all materials returned to it.

8. Awarding Plaintiff:

    i. Defendant's profits obtained as a result of Defendant's conduct, including but not limited to all profits from sales and other exploitation of the Copyrighted Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works, or in the Court's discretion, such amount as the Court finds to be just and proper;

    ii. damages sustained by Plaintiff as a result of Defendant's conduct, in an amount to be proven at trial;

    iii. should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and

iv.     Plaintiff's attorneys' fees and costs pursuant to 17 U.S.C. § 505.

9.     Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

10.     Awarding such other and further relief as the Court deems just and proper.

December 19, 2019

Respectfully submitted,

AXINN, VELTROP & HARKRIDER LLP

Eva H. Yung
Eric Dunbar, *application for admission
approved, admission pending*
114 West 47th Street
New York, NY 10036
Telephone: 212.728.2200
Facsimile: 212.728.2201
eyung@axinn.com
edunbar@axinn.com

John M. Tanski
Drew A. Hillier
90 State House Square
Hartford, CT 06103
Telephone: 860.275.8100
Facsimile: 860.275.8101
jtanski@axinn.com
dhillier@axinn.com

Aziz Burgy, *motion for admission pro hac
vice to be filed*
90 F Street, NW
Washington, DC 20004
Telephone: 202.912.4700
Facsimile: 860.912.4701
aburgy@axinn.com